## BRY-BLOCK MERCANTILE CO. v. MRS. MYRTLE BYRD.

Western Section.   June 25, 1926.

Petition for Certiorari denied by Supreme Court January 29, 1927.

1. **Courts. Practice. Presiding judge held justified in sending case to another judge for re-trial.**

   In an action where a case was tried before a judge of one division and a mistrial was had and the case was thereafter reassigned by the presiding judge to another division for trial, because the first judge was busy engaged in trying other cases, held that the fact that the judge was busy constituted good cause for transferring the case.

2. **Evidence. Circumstantial evidence held sufficient to sustain the finding of a jury that defendant's truck was being operated by it at the time of the accident.**

   In an action to recover for personal injuries sustained by being struck by a truck where the evidence showed that the truck came out of an alley where defendant's trucks were loaded and that the truck had painted thereon the defendant's name in special letters and the evidence further showed that

only defendant's trucks had this name on them, and that defendant owned eleven trucks which were all in operation at the time of the accident by employees of it, **held** the evidence was sufficient for the jury to find that the truck belonged to the defendant, and was operated by it's agent at the time of the accident.

Appeal in Error from Circuit Court, of Shelby County; Hon. Ben. L. Capell, Judge.

Affirmed.

M. E. Lesser, of Memphis, for plaintiff in error.

Puryear & Rosenfield, of Memphis, for defendant in error.

Owen and Senter, JJ., concur.

HEISKELL, J. On the 15th of January, 1924, Mrs. Myrtle Byrd, plaintiff below, filed her declaration in the Circuit Court of Shelby County, Tennessee, against plaintiff in error herein, the defendant below. By this declaration she averred that on December 1, 1923, and while as a pedestrian she was proceeding northwardly over the sidewalk on the east side of Front Street in Memphis, and when in the act of attempting to cross an alleyway that runs in an eastward and westward direction, and along the north end of the premises occupied by the business of the defendant company, she was struck by an automobile alleged to have been the property of defendant, operated by one of its agents or servants within the scope of his employment, and upon the master's business. It was averred substantially that the accident was brought about in the following manner:

That as defendant in error was in the act of attempting to cross from the south to the north side of this alleyway, this automobile delivery truck came out of the alley, proceeding· in a westward direction; that after the automobile had gotten some distance into Front Street, it was brought to a stop, and defendant in error, believing the way clear, proceeded into the alley in her attempt to cross same; that suddenly, and without the giving of any warning to her of his intention so to act, and without due regard for her safety but on the other hand, in a careless and negligent manner, the operator of this truck reversed the direction of same, and began backing into the alley out of which he had just come; and that as a result of this negligent operation, defendant in error was struck by the rear of the truck, knocked down and seriously injured. Her damage was laid at five thousand dollars.

To this declaration, plaintiff in error filed two pleas, to-wit, Not Guilty and Contributory Negligence.

On January 21, 1925, approximately fourteen months after the date of the alleged accident, defendant in error sought and received leave of court to amend her declaration by averring the development of a dropsical condition, alleged to have resulted from the injury originally complained of.

On January 21, 1925, the trial of the cause having been entered upon before the Hon. H. W. Laughlin, Judge, but not being completed, the jury was respited. On the following day, the cause having proceeded to the conclusion of all of the testimony, and upon defendant's motion for a directed verdict in its behalf, said motion was by the learned trial court sustained, with costs adjudged against plaintiff. On January 31, 1925, plaintiff's motion for a new trial was submitted to said learned court, and this motion was by said court, on March 14, 1925, sustained.

On November 16, 1925, this cause was again assigned for trial for December 8, 1925, and on this latter date was re-set for December 17, 1925, and over the protest of the defendant herein, this cause was by the Honorable A. B. Pittman, at that time acting as the presiding judge of the Circuit Court of Shelby County, Tennessee, assigned for trial before Honorable Ben Cappell, presiding as judge of Division 2 of said Circuit Court.

On December 18 1925, and in Division 2 of said Circuit Court, a jury returned a verdict in favor of plaintiff and against the defendant in the sum of three thousand dollars, following which judgment was pronounced by said court against plaintiff in error in said sum.

Motion for new trial was made and overruled, and the defendant company has appealed and assigned errors as follows:

1st. The Hon. A. B. Pittman, acting as the presiding judge of the Circuit Court of Shelby County, Tennessee, erred when, over the protest of plaintiff in error herein, and despite the latter's insistence that this cause be reassigned for a retrial before the Hon. H. W. Laughlin, Judge of Division 4 of said Court, assigned same for trial before Hon. Ben Cappell, presiding over Division 2 of said Court.

2nd. There is no evidence to support the verdict of the jury as against plaintiff in error herein.     ·              ·

3rd. The learned trial court erred in having failed and refused to grant and sustain the motion of plaintiff in error herein for a directed verdict in its behalf, filed at the conclusion of the taking of evidence on behalf of defendant in error herein.

4th. The learned trial court erred in having failed to give plaintiff in error the benefit of its own great learning and judg-

ment, uninfluenced by the splendid learning, but equally as erroneous judgment of the learned judge presiding over Division 4 of the Circuit Court of Shelby county.

5th. Because of error on the part of the learned trial court in having failed and refused to sustain and grant plaintiff in error's motion for a directed verdict in its behalf filed upon the conclusion of the taking of all of the testimony in this cause, and again, and in this same connection, in having failed to give plaintiff in error the benefit of his own judgment on said motion, uninfluenced by the previous action of one of his colleague judges in having finally held plaintiff in error herein not entitled to such a directed verdict.

6th. Because the verdict of the jury is so excessive as to indicate the influence of bias, prejudice and caprice on its part in the returning of same.

The second, third and first part of the fifth assignments present the contention of appellant that there is no evidence to sustain the verdict and therefore the motion for a directed verdict should have been sustained.

The rest of the assignments down to the sixth claim error because the presiding judge did not refer the case to Judge Laughlin, who tried the case the first time, and because the trial judge adopted the ruling of Judge Laughlin in regard to leaving the case to the jury. We will dispose of these contentions first. The rule of court required the presiding judge to send this case to Judge Laughlin, "unless good cause to the contrary appeared." Judge Pittman held that the fact that Judge Laughlin was engaged in the trial of another case, which would take some time, constituted good cause to the contrary. To assign the case to Judge Laughlin involved a continuance, with dispersal of witnesses and loss of time. We cannot say the discretion vested in the presiding judge was improperly exercised. Nor can we see that it was reversible error for Judge Cappell to follow the ruling of Judge Laughlin in granting a new trial, especially when the question is now before this Court whether or not it was error to leave the case to the jury. These assignments are overruled.

The sixth assignment is not supported by the brief and therefore is not entitled to be considered. It is accordingly overruled.

This leaves for consideration the single question, is there any evidence to support the verdict. In approaching this question the Court is fortunate in that opposing counsel agree not only as to just what the question is, but as to just what authorities control its determination.

In order to maintain the verdict the proof must show; (1) That the truck which caused the injury to plaintiff belonged to the defendant. (2) That it was operated by a servant of the defendant. (3) That the operator was in and about the defendant's business.

The proof is not controverted that plaintiff was walking along the east side of Front Street, in Memphis, going north, when the truck going west came out of the alley between Jefferson and Adams, on to Front Street, but on account of traffic on Front, stopped with the rear of the truck clear of the sidewalk lines across the alley. Thereupon the plaintiff started across the alley when the truck, without warning, backed into her, knocked her down and injured her, then started forward going out into and along Front Street, and disappearing. The driver did not stop the truck after the accident, did not alight from the truck and of course did not come back to the scene of the accident. The driver was not identified. The truck had on it the name of "Bry's," in the distinctive script used by the defendant company in its advertising. It is conceded by counsel for defendant that this is sufficient to warrant the finding that the defendant owned the truck in question, but it is contended that in order to reach a verdict against the defendant the jury must have inferred from the ownership of the truck that it was driven by a servant of the defendant, and then from this inference have inferred that the servant was engaged in and about his master's business. If the defendant is right in its premises the conclusion is beyond question that the verdict cannot be sustained and this is conceded by counsel for plaintiff, but they point out that the operation of the truck by defendant's servant and the operation about defendant's business may be shown by circumstances, and that in this case these facts are so shown by the proof and are not dependent on an inference based upon an inference. That is to say, each fact necessary to support the verdict is justified by its own set of circumstances, established by proof, and not dependent on any preceding inference.

In support of this contention the following proof in the record is referred to:

The alley in question, while open to the public, had been by permission of the City built over by the defendant company and was in reality a subway through its building, in which its delivery trucks loaded, unloaded and in which they parked.

D. B. Lackey testified that he was shipping clerk and superintendent of deliveries of the defendant company at the time of the accident. That on December 1, 1923, the defendant owned eleven delivery trucks with the name "Bry's" on them and that the de-

fendant advertised under this name. That at that time the defendant employed eleven drivers who were regularly assigned to drive said trucks and that on said day, from his own personal recollection and from the records of the defendant, all of these drivers were on duty at the time of the accident and all of the eleven trucks were being used in the delivery of merchandise of the defendant, or returning therefrom, these deliveries being made from the platform in said alley.

Each of the eleven drivers were introduced as witnesses in the case by the defendant, each of whom testified that he had no accident that day, but admitted that he was employed by the defendant as driver of a truck assigned to him and was about the business of the defendant in delivering merchandise on the night of December 1, 1923, about 8 or 8:30 P. M. That from the time they went to work that morning until they put the trucks away at night, they were so engaged.

As stated above, opposing counsel agree that the rules controlling the determination of this case are to be found in the following cases. Davis v. Tire. Co., 141 Tenn., 527; Frank v. Wright, 140 Tenn., 538; King v. Smythe, 140 Tenn., 217; Telegraph Co. v. Lamb, 140 Tenn., 107; Sobolovitz v. Lubric Oil Co., 107 Ohio St., 204.

But from the same cases they argue to different conclusions.

In Davis v. Tire Co., 141 Tenn., 530, we find this:

"It is not necessary to state the reasons supporting the rule which proves the ownership of the car will not justify an inference of liability against defendants. The authorities seem to hold/ that the defendant's liability arises from his supposed control over his servant at the time of the accident. This control is not established directly or inferentially by proof only of the ownership of the car. The identity of the servant and his employment by defendant must be established by proof, as well as the ownership of the car, before it can be inferred that the servant was acting within the scope of his employment. We do not say that both of these facts may not be established by circumstances; but there must be some evidence of the ownership of the car, the identity and employment of the servant, before it can be inferred that he was acting within the scope of his employment at the time of the accident."

In Frank v. Wright, 140 Tenn., at page 539 the Court says:

"The true rule is as stated in Labatt on Master and Servant, Vol. 6, section 2281 A, as follows:

A servant may be presumed prima facie to have been acting in the course of his employment, wherever it appears, not only

that his master was owner of the instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended use in connection with its use in the master's business.''

The truck that injured the plaintiff was marked ''Bry's'' with the distinctive word used by defendant in advertising. There is no suggestion that any truck but one owned by defendant was ever so marked. It was coming out of what was, in a sense, a part of the business house of the defendant, right from the loading platform of defendant, in the alley. On that day and that night the defendant's trucks were on duty in and about defendant's business and each truck had a designated driver employed by defendant and at that time engaged in operating his truck about the master's business. If the fact that the driver was the servant of the defendant and the fact that he was about the defendant's business can be established by circumstances, it would seem they are made out in the present case. Also we think the rule laid down by Labatt is complied with. It appears not only that the instrumentality was owned by the master, but that at the time when the alleged tort was committed it was being used under conditions resembling those which normally attended use in connection with its use in the master's business.

The only theory upon which the mind can escape the conclusion that this truck was driven by some one not employed by the defendant, or by one of defendant's drivers not about his master's business, is that there was a total departure from the usual and ordinary routine of business at that time and place. Defendant is bound by its own witnesses, whether plaintiff is or not. It cannot say one of its drivers drove a truck about his own business because they say they were not driving the truck in question at all. The only hypothesis then that offers an escape from the conclusion reached by the jury, is that some person not employed by the defendant and not authorized to drive its trucks, drove off one of the eleven trucks without permission. If this were so, it was a matter within the knowledge of defendant's agents and witnesses, and presumably defendant would not have been reluctant to make the proof.

If a defendant had only one car, and one chauffeur, and his car was identified as the one that inflicted the injury, and the proof showed that the chauffeur, during the time of the accident, was engaged in operating the master's car in the locality of the accident and about the master's business, and that the locality of the accident was the locality in which the chauffeur was accustomed to operate

the car in and about his master's business, that would make out at least a prima facie case of liability, which, in the absence of countervailing proof, would support a verdict. There is nothing in the Tennessee cases cited in conflict with this view of the present case.

Counsel for appellant, however, insist that Sobolovits v. Lubric Oil Co., 107 Ohio State Reports, 209, is exactly in point as to facts and squarely in favor of his contention. In that case there was no such proof as in the present case, over and above the proof of ownership to support the inference that the truck was driven by a servant about the master's business. The court said in that case:

"This court has gone perhaps the full limit upon the subject of scintilla, and has held that if there is a scintilla of evidence upon the question in issue the question is one for the jury, and has defined a scintilla as any evidence, or reasonable inference which may be drawn from evidence, which tends to prove a question in issue; but it has not extended the doctrine beyond a reasonable inference drawn from a fact supported by evidence.

The evidence in this case tends to prove that the truck bore a part of the name of the defendant company, upon which an inference of ownership might be predicated; but upon that inference it is sought to predicate the inference that, since the truck was owned by the defendant, it, at the time of the injury, was being operated by a servant of the defendant, and upon that or the same inference it is sought to predicate the further inference that it was being operated at the time in the furtherance of the business of the defendant.

While it is true that a jury in the trial of civil cases deals with probabilities, it is limited in that respect to the ascertainment of the probable truth from the evidence and reasonable inference deductible therefrom. An inference presupposes a premise from which it is deduced, and, as applied to evidence, the premise is some proven fact. The inference arises out of a process of reasoning, or from common experience, that when certain facts exist, certain other facts usually co ordinate therewith, but we find no authority for basing an inference upon an inference, and it therefore does not follow that because one essential element of a right to recover may be inferred from proof, that all other necessary elements to recover may be inferred therefrom.

In the instant case the jury, in the absence of proof to the

contract, were justified in inferring the ownership of the truck by reason of the name of the defendant being upon it.

But upon that inference it could not base an inference that the truck was being operated by a servant of the defendant, or that it was being operated in furtherance of the business of the defendant.''

The proof in this case as to the operation by a servant of defendant about defendant's business, measures up to the Ohio Court's conception of a scintilla. ''Any reasonable inference which may be drawn from evidence which tends to prove a question in issue.''

It cannot be said in the present case that there is no evidence to sustain the verdict. Therefore it was not error to refuse a directed verdict for the defendant. The assignments of error are overruled and the judgment of the lower court affirmed.

Owen and Senter, JJ., concur.